FILED
2021 Jun-04  PM 04:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | | |
|---|---|---|
| **LISA NUNLEY** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| **v.** | ) | **CASE** |
| | ) | **NUMBER: _____** |
| | ) | |
| **RELIANCE STANDARD** | ) | |
| **LIFE INSURANCE COMPANY** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Comes now the Plaintiff, Lisa Nunley, and hereby files her Complaint against Reliance Standard Life Insurance Company.

## PARTIES

1.      The Plaintiff, Lisa Nunley ("Ms. Nunley"), is an insured under Group Long Term Disability Plan for employees of Founding Partners Designee, LLC identified as Group Insurance Policy LTD 669939 ("the Plan"), who has been improperly denied disability benefits under the Plan.

2.      Defendant, Reliance Standard Life Insurance Company ("Reliance"), is the Administrator of the Plan. Upon information and belief, Reliance is a foreign corporation incorporated in the State of Illinois, which conducts business generally in the State of Alabama and specifically within this District.

1

## JURISDICTION AND VENUE

3.      This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq.  Plaintiff asserts claims for long term disability ("LTD") benefits, enforcement of ERISA rights and statutory violations of ERISA under 29 U.S.C. § 1132, specifically, Ms. Nunley brings this action to recover benefits due to her pursuant to 29 U.S.C. §1132(a)(1)(B) and to enforce her rights under the Plan pursuant to 29 U.S.C. §1132(a)(3).  This Court has subject matter jurisdiction under ERISA without respect to the amount in controversy or the citizenship of the parties.  29 U.S.C. §§ 1132(a), (e)(1) and (f) and 28 U.S.C. § 1131. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b).

## INTRODUCTION

4.      The Plaintiff in this case was subjected to improper claim handing procedures by Reliance as it exploited the shortcomings of ERISA as it relates to claims for "welfare" benefits to avoid paying Ms. Nunley's valid claim for disability benefits. The traditionally held purpose of the ERISA statute is "to promote the interest of employees and their beneficiaries in employee benefit Plans." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90 (1983). Ms. Nunley, as an employee insured for disability, was supposed to be treated as a beneficiary by Reliance as a statutory fiduciary. Instead, Reliance has breached those duties and victimized Ms. Nunley by

engaging in improper claim handling procedures. As described in more detail below, Reliance has clearly engaged in bad faith claim handling and Ms. Nunley, at minimum, is entitled to *de novo* review and all relief that ERISA provides.

## STATEMENT OF FACTS

5.     Ms. Nunley is an insured for benefits under the Plan. Reliance is the administrator of the Plan. The Plan provides insureds, like Ms. Nunley, LTD benefits and was in full force and effect at all times relevant to this Complaint.

6.     At all relevant times, Ms. Nunley was employed by St. Alexius Hospital, and was a covered participant in Founding Partners Designee, LLC's Plan, as defined in 29 U.S.C. § 1002(7) and under the terms and conditions of the Plan.

7.     Ms. Nunley, a woman fifty-three (53) years of age, worked at St. Alexius Hospital until her disabilities forced her to stop working on or about May 8, 2016.

8.     Ms. Nunley was employed at St. Alexius Hospital as a Registered Nurse. This position entailed planning work assignments based on patient needs; acting as a resource person for patients, visitors, and staff in both routine and crisis situations; assessing physical and psychosocial dimensions of patients upon admission and throughout the nursing process and documenting appropriately into the patient record; planning, implementing, and evaluating individualized plans of care; and providing quality patient care,

3

9.     Ms. Nunley's medical disabilities include lumbar disc disease with radiculopathy, chronic pain, bilateral knee osteoarthritis, and rotator cuff tendinosis. The symptoms of her impairments and the side effects of the medications and treatment prescribed render Ms. Nunley unable to perform any job.

10.     An April 21, 2016 lumbar MRI showed degenerative disc disease at L4-L5, disc bulging at two levels, and central canal and foraminal narrowing at L4-L5.

11.     Dr. Paul Matz completed an Attending Physician Statement on May 12, 2016 and noted that the claimant experienced severe limitation of her functional capacity and incapable of even minimum sedentary activity.

12.     On May 18, 2016, Ms. Nunley underwent L4-L5 lumbar laminectomies, foraminotomies and discectomies to address her lumbar disc displacement, lumbar stenosis, and radiculopathy.

13.     A lumbar MRI performed on June 14, 2016 showed post-surgical changes at L4-L5, although lumbar disc bulging, degenerative changes, and foraminal narrowing were again evident in the imaging.

14.     Ms. Nunley was approved for LTD benefits from Reliance on September 22, 2016, with benefits awarded as of August 16, 2016.

15.     Ms. Nunley received continuous LTD benefits from August 16, 2016 to August 16, 2018, totaling two (2) years of continuous benefits.

16.     Ms. Nunley's LTD benefits were approved and paid from August 16,

4

2016 until August 16, 2018 because Reliance determined that she was unable to perform the material and substantial duties of her occupation, as defined under the Plan.

17.     After receiving twenty-four (24) months of LTD benefits, Mr. Smith's claim was reviewed using the any occupation definition of disability as defined by the policy.

18.     By letter dated September 4, 2018, Reliance wrongfully terminated Ms. Nunley's LTD benefits beyond August 16, 2018.

19.     The plan at issue, as governed by ERISA and relied upon to deny Ms. Nunley's LTD benefits states, in part:

"Totally Disabled" and "Total Disability" mean that as a result of an Injury or Sickness.

1) During the Elimination Period and for the first 24 months for which a Monthly Benefit is payable, an Insured cannot perform the substantial and material duties of his/her Regular Occupation;

(a)     "Partially Disabled" and "Partial Disability" mean that as a result of an Injury or Sickness an Insured is capable of performing the substantial and material duties of his/her Regular Occupation on a part-time basis or some of the substantial and material duties on a full-time basis. An Insured who is Partially Disabled will be

considered Totally Disabled except during the Elimination Period;

(b)   "Residual Disability" means being Partially Disabled during the Elimination Period. Residual Disability will be considered Total Disability; and

2) after a Monthly Benefit has been paid for 24 months, an Insured cannot perform the material duties of Any Occupation. We consider the Insured Totally Disabled if due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a full-time basis.

20.    Using this test of disability, Reliance found Ms. Nunley disabled and approved her LTD benefits for two years as Ms. Nunley's lumbar disc disease with radiculopathy, chronic pain, bilateral knee osteoarthritis, and rotator cuff tendinosis prevented her from performing the essential duties of her occupation.

21.    However, on September 4, 2018, Reliance reversed its decision and terminated Ms. Nunley's benefits. The termination of LTD benefits was based upon Reliance's internal review as well as a May 30, 2017 Residual Employability Analysis.

22.    At all relevant times, and prior to the termination of Ms. Nunley's benefits, she was under the consistent care of her neurosurgeon, Dr. Paul G. Matz ("Dr. Matz"); physiatrist Dr. Sandra Tate ("Dr. Tate"); pain medicine specialist Dr.

Hugh Berry ("Dr. Berry"); orthopedic specialist Dr. Jason Browdy ("Dr. Browdy"); chiropractor Dr. Robert Einertson ("Dr. Einertson"); primary care physician Dr. Jennifer Knox ("Dr. Knox"); orthopedist Dr. Ryan Pomajzl ("Dr. Pomajzl"); pain medicine specialist Dr. Ahmed Ali ("Dr. Ali"); and chiropractor Dr. Howard Chapel ("Dr. Chapel").

23.     Despite the records of Ms. Nunley's treating providers' indicating that Ms. Nunley was unable to return to any occupation, Reliance relied upon its internal review by Reliance staff members and by letter dated September 4, 2018 wrongfully terminated Ms. Nunley's LTD benefits.

24.     At the time Reliance terminated the LTD benefits on September 4, 2018, it had no information that showed Ms. Nunley's medical condition had improved, when in fact, Ms. Nunley's treating physicians opined that her condition continued to deteriorate.

25.     At all relevant times of Reliance's review of Ms. Nunley's medical claim, Reliance had the contractual right to obtain better evidence of Ms. Nunley's disability by ordering an independent medical review.

26.     Rather than ordering an independent medical review, Reliance relied solely upon its own internal review to support its denial of LTD benefits.

27.     In a letter dated October 20, 2018, Ms. Nunley appealed the termination of her LTD benefits.

28.     In her appeal of October 20, 2018, Ms. Nunley noted ongoing chronic pain and limited mobility necessitating the use of a cane. Ms. Nunley noted ongoing multispecialty treatment for chronic pain, including trigger point injections for upper and lower back pain, as well as an extensive medication regimen.

29.     Despite providing proof of her disability both before the termination of benefits and throughout the appeals process, Reliance refused to award Ms. Nunley's LTD benefits and issued its final termination by letter dated June 12, 2019.

30.     In its final termination letter dated June 12, 2019, Reliance relied on the opinion of its paid medical examiner Dr. Thomas B. Kibby ("Dr. Kibby").

31.     Dr. Kibby, following an independent medical examination on January 22, 2019, acknowledged that Ms. Nunley "…appears someone who would substantially be limited in many daily life activities, and would expect to have very limited ability to lift and bend," yet rendered an opinion that Ms. Nunley was not disabled by her chronic lumbar pain, bilateral knee osteoarthritis, and right shoulder rotator cuff tendinosis.

32.     Reliance paid Dr. Kibby Three Thousand One Hundred Dollars ($3,100.00) for the opinion that Ms. Nunley's disabilities did not restrict or limit her ability to perform any occupation.

33.     In response to Dr. Kibby's examination, Reliance referred Ms. Nunley's claim for a Residual Employability Analysis on January 28, 2019.

34.     Based on Dr. Kibby's assessment, Reliance's vocational rehabilitation specialist identified nine occupations which Ms. Nunley was deemed capable of performing.

35.     Responding to Dr. Kibby's report, Ms. Nunley provided a statement on February 12, 2019 in which she recounted her appointment with Dr. Kibby and noted frequent pain throughout the examination. She also noted frequent and consistent pain in the upper and lower back, neck, shoulders, arms, legs, and knees; reported difficulty sitting for prolonged periods; and noted medication side effects including tiredness, sleepiness, and difficulty concentrating.

36.     Responding to the January 28, 2019 Residual Employability Analysis, Ms. Nunley noted in her February 12, 2019 response that she was unable to perform the listed occupations in the medical field as her impairments would put staff and patients at risk in an emergency situation. Ms. Nunley also cited a lack of training or higher education which would prevent the performance of some jobs listed in the Residual Employability Analysis, stating "[b]eing that some of [the] jobs are not able to take care of my basic needs or I require more education, I don't understand how I am expected to work these jobs full time at my current medical status."

37.     After receiving medical records from a January 22, 2019 urgent care visit, Dr. Kibby produced an addendum to his independent medical examination on March 20, 2019 in which he opined that his prior opinion remained unchanged.

38.     Reliance paid Dr. Kibby Three Hundred Dollars ($300.00) for the updated opinion that that Ms. Nunley's disabilities did not restrict or limit her ability to perform any occupation.

39.     By and through counsel, Ms. Nunley responded to Dr. Kibby's addendum on April 2, 2019. Ms. Nunley included with her response additional medical records outlining the decline of her condition, as well as a personal declaration.

40.     Records from Chapel, McMurtrie & Bartlett Chiropractic Orthopedics and Sports Medicine showed Ms. Nunley to attend appointments between February 19, 2019 and March 27, 2019 for treatment of her low back, neck, leg, joint, and muscle pain. In a March 27, 2019 treatment note, Dr. Howard Chapel noted that "I have indicated that I do not believe there's anyway this patient will make anywhere near a full recovery even with surgery."

41.     Ms. Nunley's declaration noted that she lived in a small 600 square foot apartment which did not necessitate much walking, and that she spent most of her time in bed or sitting in a recliner due to pain. Ms. Nunley also reported difficulty driving, limited range of motion in the shoulders, medication side effects including confusion, and difficulty standing and walking necessitating the use of a cane or a scooter.

42.     Dr. Kibby responded to Ms. Nunley's updated medical records and

declaration on April 3, 2019, noting that his opinion remained unchanged.

43.     Reliance paid Dr. Kibby Eight Hundred Dollars ($800.00) for the updated opinion that that Ms. Nunley's disabilities did not restrict or limit her ability to perform any occupation.

44.     Dr. Kibby's opinion as reflected in the termination letter dated June 12, 2019 solely focused on Ms. Nunley's physical functionality and failed to consider Ms. Nunley's non-exertional limitations.

45.     On July 16, 2019, approximately one month following Reliance's final termination of LTD benefits on June 12, 2019, Ms. Nunley was informed by the Social Security Administration that she was deemed totally disabled.

46.     As of this date, Ms. Nunley has been denied benefits rightfully owed to her under the Plan.

47.     Ms. Nunley has met and continues to meet the Plan's definition of disabled

48.     Ms. Nunley has exhausted any applicable administrative review procedures and her claim is ripe for judicial review pursuant to 29 U.S.C. § 1132.

49.     Reliance's refusal to pay benefits has caused tremendous financial hardship on Ms. Nunley.

## STANDARD OF REVIEW

50.     A denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is to

11

be reviewed under a *de novo* standard unless the benefit Plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the Plan.

51.    When discretionary authority is clearly granted and the insurer of an ERISA plan also acts as a claims administrator, there is a structural or inherent conflict of interest that mandates a heightened arbitrary and capricious standard of review.

52.    Upon information and belief, the Plan does not grant discretionary authority to determine eligibility for benefits to Reliance or to any other entity who may have adjudicated Ms. Nunley's claim. Therefore, the Court should review Ms. Nunley's claim for benefits under a *de novo* standard.

53.    Upon information and belief, Reliance evaluated and paid all claims under the LTD plan at issue, creating an inherent conflict of interest.

54.    Reliance has failed to comply with the letter of the claims procedures outlined in ERISA and therefore Ms. Nunley's claim for benefits should be reviewed by this Court under a *de novo* standard.

55.    In the alternative, if the Court finds that Reliance is entitled to the heightened arbitrary and capricious standard of review, the termination of Plaintiff's benefits constitutes a clear abuse of discretion as Reliance's decision to deny Ms. Nunley's LTD benefits was arbitrary and capricious.

## DEFENDANT'S WRONGFUL AND UNREASONABLE CONDUCT

56.     Reliance has wrongfully denied LTD benefits to Ms. Nunley, in violation of the policy provisions and ERISA, for the following reasons:

(a) Ms. Nunley is totally disabled, in that she is prevented from performing one or more of the essential duties of her occupation;

(b) Ms. Nunley is entitled to disability benefits under the terms of the Plan, as she meets the Plan's definition of disability and she has otherwise met the conditions precedent of the Plan for coverage and entitlement to benefits;

(c) Reliance failed to accord proper weight to the evidence in the administrative record showing that Ms. Nunley is totally disabled;

(d) Reliance's interpretation of the definition of disability contained in the Plan is contrary to plain language of the Plan, unreasonable, arbitrary, capricious, and otherwise violated the standards required by ERISA;

(e) Reliance wrongfully denied Ms. Nunley a full, fair and impartial review of her benefits claim pursuant to 29 C.F.R § 2560.503-1(h)(1), by ignoring the overwhelming weight and credibility of evidence submitted and instead behaved as an adversary, looking instead for less credible evidence of marginal significance to support its goal of

denying her benefits claim;

(f) Reliance failed to give proper weight to Ms. Nunley's own accounts regarding the debilitating effects of her pain;

(g) Reliance ignored the records and opinions of Ms. Nunley's treating physicians which show that Ms. Nunley is totally disabled, and instead based its decision to deny benefits on its internal review by Reliance staff members and its paid consultants, who were not as qualified as Ms. Nunley's treating physicians to formulate opinions regarding the nature and extent of his disability;

(h) Reliance failed to exercise reasonable flexibility in its claims review process to assure Ms. Nunley a full, fair review, well-reasoned, and principled of his claim;

(i) Reliance administered Ms. Nunley's claim for LTD benefits while acting under an inherent and substantial conflict of interest in that Reliance served both as fiduciary of and funding source for the Plan, and placed its own pecuniary interest above Ms. Nunley's interest in wrongfully terminating her LTD benefit and failing to administer the Plan as an impartial decision-maker, free of such conflict of interest, would;

(j) Reliance made erroneous interpretations of some evidence in

violation of its obligation to discharge its duties with care, prudence, skill, and diligence;

(k) Reliance acted in bad faith by denying Ms. Nunley's claim based upon the inability of Reliance's paid consultants to find Ms. Nunley disabled, and otherwise failed to administer the Plan honestly, fairly, and in good faith, and to at all times act in Ms. Nunley's best interests;

(l) Reliance terminated Ms. Nunley's benefits without the support of any new information that showed improvement in Ms. Nunley's medical condition, when in fact, her treating physicians opined that her condition continued to deteriorate as it had for two years;

(m)     Reliance failed to support the termination of benefits with substantial evidence;

(n) Reliance imposed a standard not required by the Plan's provisions by requiring objective evidence of Ms. Nunley's subjective medical conditions where such evidence cannot be reasonably provided;

(o) Reliance denied Ms. Nunley's claim for a lack of objective medical evidence when Ms. Nunley has provided ample subjective evidence of a disability and Reliance has neither identified any objective evidence that Ms. Nunley could have supplied to support the

15

claim;

(p) Reliance failed to consider Ms. Nunley's non-exertional limitations cause by her disability, such as the side effects of her prescribed medications, her ability to regularly attend work, and the effect her disability has on her concentration, persistence and pace when performing the material duties of any occupation;

(q) Reliance's termination of Ms. Nunley's benefits failed to provide a detailed explanation and the basis of its disagreement with the opinions of Ms. Nunley's treating physicians;

(r) Reliance wrongfully denied Ms. Nunley's LTD benefits in such other ways to be shown through discovery and/or hearing.

57.    As a result of the foregoing, the relief to which Ms. Nunley is entitled includes: (1) monthly LTD income benefits to Ms. Nunley, (2) payment of back benefits from August 17, 2018 to the date of judgment, (3) pre-judgment interest, (4) equitable relief, including declaratory and injunctive relief, to redress Reliance's practices that are volative of the Plan and ERISA, and to enforce the terms of the Plan and ERISA, and (6) an award of attorney's fees and costs pursuant to 29 U.S.C. § 1132(g).

## CAUSES OF ACTION

### COUNT ONE
### ERISA (Claim for Benefits Owed under Plan)

58.     Plaintiff hereby incorporates by reference each and every fact as if it was restated herein.

59.     At all times relevant to this action, Ms. Nunley was a participant of the Plan underwritten by Reliance and issued to Founding Partners Designee, LLC and was eligible to receive disability benefits under the Plan.

60.     As more fully described above, the termination and refusal to pay Ms. Nunley's benefits under the Plan for the period from at least on or about August 17, 2018 through the present constitutes a breach of Defendant's obligations under the Plan and ERISA. The decision to deny benefits to Ms. Nunley constitutes an abuse of discretion as the decision was not reasonable and was not based on substantial evidence.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays the Court for the following:

1.     A judgment ordering the applicable standard of review in this case is *de novo*;

2.     A judgment ordering that by a preponderance of the evidence, the Defendant has breached its fiduciary duty to the Plaintiff by wrongfully denying her LTD benefits owed to her through the Plan;

3.     In the alternative, if the Court determines that the applicable standard of review is the heightened arbitrary and capricious standard, the Court may take

and review the records of Defendant and any other evidence that it deems necessary to conduct an adequate arbitrary and capricious review and enter a judgment that Defendant's decision to wrongfully deny Plaintiff's LTD benefits was unreasonable, arbitrary and capricious, and unsupported by substantial evidence;

4.      Declaratory and injunctive relief, finding that Defendant violated the terms of the Plan and Plaintiff's rights thereunder by terminating Ms. Nunley's LTD benefits; that Ms. Nunley is entitled to a continuation of future LTD benefits from Defendant pursuant to the Plan;

5.      Declaratory and injunctive relief, finding that Defendant breached its fiduciary duties to Plaintiff, enjoining Defendant from further violations of its fiduciary duties, and directing Defendant to take all actions necessary to administer the Plan in accordance with the terms and provisions thereof and Defendant's fiduciary and other obligations arising under ERISA;

6.      A judgment ordering Defendant to pay Ms. Nunley's LTD benefits from August 17, 2018 through the date of judgment is entered herein, together with pre-judgment interest on each and every such monthly payment through the date of judgment;

7.      An award of attorney's fees and costs pursuant to 29 U.S.C. § 1132(g);

8.      For such other and further relief as the Court deems just, fit and proper.

Respectfully submitted this 4th day of June, 2021.

*/s/ Peter H. Burke*          
Peter H. Burke (ASB-1992-K74P)

pburke@burkeharvey.com
BURKE HARVEY, LLC
3535 Grandview Parkway, Suite 100
Birmingham, Alabama 35243
Phone: 205-930-9091
Fax: 205-930-9054
*Attorney for Plaintiff Lisa Nunley*

## PLEASE SERVE DEFENDANT BY CERTIFIED MAIL AT:

Reliance Standard Life Insurance Company
c/o CT Corporation System
2 North Jackson St, Suite 605
Montgomery, AL 36104